IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 03-38089-H4-11** |
| **VALORIE W. DAVENPORT** | § | |
| | § | **(CHAPTER 7)** |
| **DEBTOR** | § | |

| | | |
|---|---|---|
| | § | |
| **RON S. RAINEY** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | **ADV. NO. 04-03618** |
| **V.** | § | |
| | § | |
| **VALORIE W. DAVENPORT** | § | |
| | § | |
| **DEFENDANT** | § | |

**MEMORANDUM OPINION ON:**
**(1) THE DEFENDANT'S MOTION TO ENLARGE TIME TO FILE NOTICE OF**
**APPEAL; AND (2) THE PLAINTIFF'S MOTION TO STRIKE/DISMISS**
**DEFENDANT'S MOTION TO EXTEND TIME TO FILE NOTICE OF APPEAL**
**AND REQUEST FOR EVIDENTIARY HEARING**

**I. INTRODUCTION**

On March 31, 2006, this Court held a hearing (the Hearing) on: (1) the Motion of *pro se*

Defendant Valorie Davenport (the Defendant)[1] to Enlarge Time to File Notice of Appeal (Doc. No.

113) (the Defendant's Motion) of this Court's Judgment entered on February 7, 2006 (Doc. No. 106)

(the Judgment, or the Court's Judgment); and (2) the Motion of Ron Rainey (the Plaintiff) to

Strike/Dismiss Defendant's Motion to Extend Time to File Notice of Appeal, Plaintiff's Response

to Defendant's Motion to Extend Time to File Notice of Appeal and Request for Evidentiary Hearing

---

[1] Although Ms. Davenport represents herself *pro se*, she is not within the category of *pro se* defendants with little
or no knowledge of the law; she has practiced law, primarily as a trial lawyer, since 1984.

1

(Doc. No. 114) (the Plaintiff's Response).[2]  In reaching its decision, the Court considered: (1) the Defendant's Motion; (2) the Plaintiff's Response; (3) the Plaintiff's Bench Brief 8002(c) and the Automatic Stay (Doc. No. 120); (4) the Plaintiff's Bench Brief as to No Showing of Excusable Neglect (Doc. No. 121); (5) the testimony of the witnesses listed in the Plaintiff/Respondent's Exhibit List (Doc. No. 119); (6) the testimony of the witnesses listed in the Defendant's Witness List[3]; and (7) the exhibits set forth in the Plaintiff/Respondent's Exhibit List (Doc. No. 118).[4]  After due consideration of all of these items, and for the reasons set forth below, the Court denies the Defendant's Motion because: (1) under Federal Rule of Bankruptcy Procedure 8002 (Rule 8002), the Defendant's Motion was not timely filed; and (2) alternatively, even if the Defendant's Motion was timely filed, the Defendant has failed to demonstrate excusable neglect as required under Rule 8002(c)(2) to warrant an enlargement of time for her to file a notice of appeal of the Judgment.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Bankruptcy Rule 7052.  To the extent that any finding of fact is construed to be a conclusion of law, it is adopted as such.  To the extent that any conclusion

---

[2]The Court construes the pleading numbered 114 on the docket as the Plaintiff's Response opposing the Defendant's Motion.  Accordingly, the Court addresses the Defendant's Motion and Plaintiff's Response in this Memorandum Opinion.

[3]Due to Defendant's history for lack of preparation, for the sake of economy of the Court's resources, and to create an accurate record, the Court instructed the parties to submit exhibit and witness lists according to reasonable criteria. (Doc. No. 116.)  The Court instructed the parties to assemble their exhibits in three ring binders with an exhibit list.  The Court further instructed that if either party's exhibits were not assembled in this manner, then the Court would not admit any of the party's exhibits.  The Court also instructed the parties to list witnesses in a witness list setting forth the name of each witness, how long each witness would testify, and the subject matter of each witness' testimony.  The Court notified the parties that if they chose not to follow these instructions, then the Court might not allow testimony from the offending party's witnesses.  The Defendant chose not to introduce any exhibits and therefore did not submit an exhibit list.  However, the Defendant did submit a witness list that, contrary to the Court's instructions, only set forth the names of her witnesses and thereby omitted the duration and subject matter of each witnesses' testimony.  Despite the Defendant's failure to follow the Court's instructions, the Court permitted the Defendant to call all of the witnesses on her list.

[4]Exhibits admitted from the Plaintiff/Respondent's Exhibit List will be referred to as (Pl. Ex. ___ ).

of law is construed to be a finding of fact, it is adopted as such. The Court reserves the right to make any additional findings and conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

### A.    Credibility of Witnesses

By way of background and introduction, the Court first addresses the credibility of the witnesses who testified at the Hearing. The Court heard testimony from the following witnesses: Jeff Wells (Wells), Denise Novotny (Novotny), Michael M. Essmyer (Essmyer, or the Plaintiff's counsel), the Defendant, and Kimberly Coco (Coco). After listening to the testimony and observing the witnesses as they testified, the Court makes the following determinations regarding the credibility of witnesses:[5]

### 1.    Jeff Wells (the Brother of the Defendant)

1.    Wells is the Defendant's and Novotny's brother and has assisted the Defendant with her law practice. At the relevant time, Wells and Novotny shared the responsibility of collecting the mail at the Defendant's law office located at 4400 Louisiana, Suite 1210, Houston, Texas 77002 (the Defendant's office). Both Wells and Novotny testified that they communicated with each other on a regular basis to ensure that the mail was retrieved from the Defendant's office every day. The testimony of Wells and Novotny concerned the following facts central to the Defendant's Motion: (1) On February 28, 2006, Wells retrieved the envelope containing the Court's February 7, 2006 Judgment (Doc. No. 106), Memorandum Opinion (Doc. No. 105) (the Opinion), Order Denying Plaintiff's Motion for Sanctions (Doc. No.

---

[5]Any facts set forth in this Credibility of Witnesses section are incorporated as findings of fact in the Factual Background section, which immediately follows this Credibility of Witnesses section.

109), and Order Granting in Part Plaintiff's Motion to Strike, Motion to Dismiss, and Motion for Sanctions (Doc. No. 110); (2) Wells delivered the envelope to Novotny; (3) Novotny opened the envelope and noted that its contents were unfavorable to the Defendant; and (4) Novotny did not notify the Defendant of the receipt or contents of the envelope until March 2, 2006.

2.     Wells' testimony was questionable.  He often was unable to recall the specifics of events central to the Defendant's Motion that he personally witnessed approximately one month prior his testimony at the Hearing.

3.     Moreover, Wells' testimony conflicted with Novotny's about the details of key events, which casts aspersions on the credibility of both Wells and Novotny.  For example, Wells testified that he retrieved the mail for the Defendant's office on February 28, 2006 because Novotny had telephoned him and said that she would not be at the Defendant's office that day to collect the mail.  Wells then testified that after he retrieved  the mail on February 28, 2006, he took the mail to Novotny, who was in the Defendant's office upstairs.   In contrast, Novotny later testified that Wells brought the mail to her at her home on February 28, 2006.

4.     Wells further testified that he could not recall if he, the Defendant, or Novotny was out of town between February 7, 2006 (i.e., the date the Judgment was entered on the docket) and February 28, 2006 (i.e., the date that Wells asserts that he found the envelope from the Clerk's office containing the Judgment, the Opinion, and the two Orders).  Moreover, when he did recall events, he was able to do so only because the Defendant, when examining him in her *pro se* capacity, asked him leading questions.  For example, Wells first testified that

his sister, Novotny, notarized his affidavit.[6]  When the Plaintiff's counsel showed Wells his affidavit notarized by someone other than Novotny, Wells still could not recall how or where his affidavit was notarized.   Wells was only able to recall the notarization when the Defendant examined him on re-direct, and in a leading question, reminded Wells that he had his affidavit notarized at approximately 11:00 p.m. on March 9, 2006, at a Woodforest Bank branch, which was open 24 hours a day in a Wal-Mart store.

5.     All in all,  Wells' recall was conveniently clear when it suited the Defendant's interests and inexplicably vague when the Plaintiff's counsel cross-examined him about key events. Because Wells' memory of relevant events was unclear, confused, and/or contradictory, this Court finds that Wells' testimony was not very credible.

### 2.     Denise Novotny (the Sister of the Defendant)

6.     Prior to recently opening her own practice out of her home, Novotny assisted the Defendant in her law practice.  The Court finds that Novotny was not credible on certain points.  Like Wells and the Defendant, Novotny's memory was also conveniently clear when it suited the Defendant's interests and inexplicably vague about the specifics of key events.  As noted above, this Court heard Wells testify that he retrieved the mail from the Defendant's office on February 28, 2006 because Novotny had contacted him and indicated that she would not be at the Defendant's office to retrieve the mail that day.  Wells then testified that after he

---

[6]This testimony is set forth in Wells' affidavit attached to the Defendant's Motion. Wells' affidavit was the only evidence accompanying the Defendant's Motion. Wells' affidavit sets forth that:  (1) he retrieves the mail at the Defendant's office; (2) on February 28, 2006, he retrieved the envelope containing this Court's Judgment, Opinion, and two Orders signed and entered on February 7, 2006; (3) he directly delivered the envelope to Novotny later on February 28, 2006; (4) he was present on March 2, 2006, when Novotny gave the envelope to the Defendant, the Defendant asked when her office received the envelope, and Wells and Novotny replied that Wells retrieved the envelope from the mailbox at the Defendant's office on February 28, 2006; and (5) he knows that the postal worker deposited the envelope into the mailbox at the Defendant's office because he also "retrieved and removed all of the mail on the box on Monday, February 27, 2006, leaving the box empty prior to the Tuesday [February 28, 2006] delivery." (Def's Mot., Wells Aff. (Doc. No. 113).)

retrieved the mail on February 28, 2006, he delivered the envelope that contained the Judgment, Opinion, and two Orders to Novotny, who was upstairs in the Defendant's office. Novotny, on the other hand, testified that Wells delivered the envelope to her at her home on February 28, 2006.

7.   Additionally, Novotny became frustrated when counsel for the Plaintiff questioned her about which items she read from the envelope containing the Judgment, Opinion, and two Orders. Novotny eventually testified that she had briefly looked at the contents of the envelope only to determine whether "it was positive or negative." Novotny further testified that she did not inform the Defendant of the Judgment until March 2, 2006, because the Defendant was either out of town or working on a critical deadline. Novotny also could not recall whether she or the Defendant was in town from February 7, 2006 through February 28, 2006.

8.   Because Novotny's recall of relevant events was unclear unless led by the Defendant, and because her testimony contradicted other testimony, this Court finds that Ms. Novotny's testimony was not very credible.

### 3.   Michael Essmyer (Counsel for the Plaintiff)

9.   Essmyer is counsel for the Plaintiff. The Court finds that the testimony of Essmyer was credible.

### 4.   Valorie W. Davenport (the Defendant)

10.   When the Defendant testified, she was not a convincing witness. To a considerable extent, the Defendant presented her side of the story not from the witness box but from the podium during the time that she examined witnesses.

11.   When examining her brother, the Defendant often reminded Wells of the events she alleged in her Motion when Wells himself could not remember them at all or when Wells did not

testify as the Defendant apparently desired.   For example, when Essmyer cross-examined

him on the subject, Wells did not remember where or when he had his affidavit notarized.

On re-direct examination, the Defendant reminded Wells that he had his affidavit notarized

at a Woodforest Bank located in a Wal-Mart late in the evening on March 9, 2006.

12.     Additionally, the Defendant constantly led Novotny during her examination.   Like Wells,

Novotny would testify one way, appearing ignorant of relevant facts when Essmyer cross-

examined her.   Also like Wells, Novotny would suddenly gain knowledge of relevant facts

and testify another way when the Defendant examined her on re-direct.   For example, when

Essmyer cross-examined her, Novotny was evasive in explaining how she prepared Wells'

affidavit and how she—to quote her exactly—"late-filed" the Defendant's Motion in the

Clerk's[7] after-hours filing depository on the morning of March 10, 2006 before the Clerk's

office opened, and that she knew nothing about how an incomplete version of the

Defendant's Motion initially appeared on the CM/ECF.[8]   (*Compare* Def's Mot. at Doc. No.

112/Pl's Ex. 5A (incomplete version of the Defendant's Motion missing the two pages with

the Defendant's signature and certificate of service), *with* Def's Mot. at Doc. No. 113/Pl's

Ex. 5B (complete version of the Defendant's Motion).)

13.     On redirect examination, the Defendant led Novotny into an explanation of how the events

happened.   The Defendant led Novotny to agree that Wells had an opportunity to review and

make changes to his affidavit, which Novotny prepared.   The Defendant further led Novotny

to explain that she did not file the Defendant's Motion until the morning of March 10, 2006

---

[7]Unless otherwise indicated, "Clerk" means the Bankruptcy Clerk for the Southern District of Texas.

[8]In the Bankruptcy Court for the Southern District of Texas, docket entries, including filings, are managed and available via the Court's Case Management/Electronic Case Filing System (CM/ECF).   All references herein to the CM/ECF mean the CM/ECF for the United States Bankruptcy Court for the Southern District of Texas.

because Novotny did not realize until then that Rule 8002(c)(2) provided the Defendant, up until March 9, 2006, with an avenue for seeking leave of this Court to file an appeal.  The Defendant also led Novotny to suddenly gain personal knowledge of how a partial copy of the Defendant's Motion initially appeared on the CM/ECF (Doc. No. 112) and a full copy appeared days later on the CM/ECF (Doc. No. 113).  Novotny speculated that the partial posting on the CM/ECF was the fault of the Clerk's office and not a problem with her filing the Defendant's Motion.

14.   While she herself was on the witness stand, the Defendant testified that she discovered, after inquiring with the Clerk, that a copy of the Opinion was not "sent" until "March 27." Presumably, the Defendant meant March 27, 2006, which was approximately one month after she claims that her office received the Opinion and accompanying documents, 18 days after she filed her Motion, and just four days before the Hearing.  The Defendant also mentioned March 27 twice when she led Novotny to agree that their investigation revealed that a full copy of the Opinion had been mailed on March 27.  The Defendant did not produce any documentary evidence that the Clerk's office, the Bankruptcy Noticing Center (BNC)[9], or anyone else mailed the Judgment, Opinion, and two Orders on March 27, 2006.

---

[9]The BNC supports Bankruptcy Rule 9036, which provides for notice by electronic transmission by the Clerk to notice recipients.  National Creditor Registration Service, https://www.ncruscourts.com.  "The BNC electronically retrieves data from the bankruptcy courts' case management systems and prints, addresses, batches, and mails the resulting notices."  *Bankruptcy Noticing Center Meets Rush*, 37 THE THIRD BRANCH 11 (Admin. Office of the U.S. Cts. Office of Pub. Affairs, Washington, D.C.), Nov. 2005, http://www.uscourts.gov/ttb/nov05ttb/bankruptcy/index.html.  The BNC (or Electronic Bankruptcy Noticing) further describes the BNC as follows:

> The [BNC] uses advanced technology to provide an efficient centralized process for preparing, producing, and sending bankruptcy notices (via mail or electronic transmission).  At data center facilities in Reston Virginia, the BNC retrieves case data each day from all the courts through electronic polling and paper.  This information is entered into a customized database where all of the notice and case data are formed into images that can be sent to recipients.  The BNC was established by the Administrative Office of the U.S. Courts (AOUSC).

Elec. Noticing Ctr., What is the BNC?, http://www.ebnuscourts.com.

Moreover, the BNC Certificates of Service relating to the Judgment, Opinion, and the two Orders indicate that the documents were mailed to the Defendant at her current office address on February 9, 2006.  (Pl's Ex. 2B (Doc. No. 107); Pl's Ex. 2A (Doc. No. 108); Pl's Ex. 2C (Doc. No. 109); Pl's Ex. 2D (Doc. No. 110).)  Additionally, Essmyer's office received copies of the Opinion, Judgment, and Orders via mail on February 13, 2006[10] and via e-mail on February 9, 2006, as he is registered with the CM/ECF.  This evidence tends to demonstrate that, contrary to the Defendant's assertions, the Judgment, Opinion, and two Orders were mailed to the Defendant on the same day that they were mailed to the Plaintiff: namely, on February 9, 2006.   This is just one of the instances that the Defendant's testimony contradicted the great weight of the evidence.  This instance, among others, leads this Court to find that the Defendant is not a very credible witness.

### 5.      Kimberly Coco (Employee in Office of Plaintiff's Counsel)

15.     Coco works in Essmyer's law office and receives, date stamps, and distributes the mail.  Coco testified that Essmyer's office received the envelope containing the Judgment, the Opinion, and the two Orders the week after the BNC mailed the documents to the Plaintiff

---

In this Adversary Proceeding, the Clerk has notified the parties of documents entered on the docket through the BNC, which transmits the documents, along with a BNC Certificate of Service corresponding to each document, via e-mail or first class mail, or both.  (*See, e.g.,* Doc. Nos. 106-110) (BNC Certificates of Service accompanying the Judgment, Opinion, and two related Orders transmitted on February 9, 2006 to the Plaintiff and Defendant via the methods indicated therein).  Each BCN Certificate of Service is signed by an agent, who "declare[s] that [he or she] has served the attached document on the above-listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of [his or her] information and belief."  *Id.*

[10]After Essmyer's assistant, Coco, reviewed Plaintiff's Exhibit 1, she testified that Essmyer's office received the envelope containing the Judgment, Opinion, and two Orders on February 15, 2005.  Plaintiff's Exhibit 1 is the envelope and contents and  bears the "Received" date stamp with Coco's signature indicating when Essmyer's office received the envelope.  The date stamp is rather faint.  On closer inspection, the Court has determined that the date stamp reads February 13, 2006, instead of February 15, 2006.

and the Defendant, as indicated on the BNC certificates of service. (*See* Doc. Nos. 107-110.) The Court finds that Coco's testimony was credible.

## B.      Factual Background

The relevant facts, either as admitted by counsel of record or as determined from the hearing on March 31, 2006 and the record, in chronological order, are as follows:

16.     On February 7, 2006, this Court signed its Judgment in this Adversary Proceeding (Doc. No. 106), finding in favor of the Plaintiff.

17.     Also on February 7, 2006, the Clerk entered the Judgment on the docket. *Id.*

18.     The Plaintiff had initiated this Adversary Proceeding by filing the Plaintiff's Complaint to Determine Dischargeability of Debt, which alleged that the Defendant breached a mediated settlement agreement regarding the percentage of contingent fees to be paid to the Plaintiff in connection with his employment with the Defendant's law firm. (Doc. No. 1.)[11]

19.     The Court's Judgment ordered that the Plaintiff's claim against the Defendant totaled $171,807.35, plus interest accrued at the rate of 18% per annum, beginning on June 2, 2003.

---

[11]As set forth in this Court's Opinion, the procedural history leading to the Plaintiff's filing of his Complaint to Determine Dischargeability of Debt is as follows:

> After [the Plaintiff] moved to [the Defendant's law firm], [the Defendant] paid him the entire promised higher salary, but she failed to remit to him his full percentage of the contingent fees. When these fees were paid to [the Defendant's] firm, [the Defendant], rather than allocating them proportionately to [the Plaintiff], spent some of the funds to which [the Plaintiff] was entitled. Thereafter, [the Plaintiff] sued [the Defendant] in state court. [The Plaintiff] and [the Defendant] achieved a settlement in mediation, and the suit was dismissed. However, the Defendant then defaulted under the terms of the mediated settlement agreement, prompting [the Plaintiff] to file a second lawsuit. In this second suit, the [state court] granted summary judgment for [the Plaintiff]. Thereafter, [the Defendant] filed a voluntary Chapter 11 petition, and [the Plaintiff] filed a proof of claim based on the mediated settlement agreement and judgment from the second suit. Once [the Defendant's] case was converted to a Chapter 7 case, [the Plaintiff] initiated this adversary proceeding by filing a complaint against [the Defendant] to determine dischargeability under 11 U.S.C. § 523(a)(4) or, alternatively, 11 U.S.C. § 523(a)(6).

(Doc. No. 105 at 2-3.)

(Doc. No. 106.)  The Court's Judgment further ordered that the Plaintiff's claim against the Defendant was nondischargeable. *Id.*

20.     On February 7, 2006, the Court also signed its Opinion (Doc. No. 105), Order Denying Plaintiff's Motion for Sanctions (Doc. No. 103), and Order Granting in Part and Denying in Part Plaintiff's Motion to Strike, Motion to Dismiss and Motion for Summary Judgment (Doc. No. 104).

21.     Also on February 7, 2006, the Clerk entered the Opinion and the two Orders on the docket.

22.     The Certificates of Service issued by the BNC indicate that the Judgment, Opinion, and two Orders were mailed to the Plaintiff and the Defendant on February 9, 2006. (Doc. Nos. 107-110.)

23.     The Plaintiff's counsel, Essmyer, received the Judgment and Opinion from the BNC on or about  February 13, 2006. (*See* Pl. Ex. 1.)

24.     At the Hearing, the Defendant, Wells, and Novotny could not testify whether any of them were certain if the mail was collected at the Defendant's office around February 13, 2006, and who collected it.

25.     Neither the Defendant, Novotny, nor Wells could recall whether they themselves, or each other, were in town between February 7, 2006 and February 28, 2006.

26.     On February 28, 2006, the Defendant's brother, Wells, retrieved from the mailbox at Defendant's office the envelope that contained the Judgment, Opinion, and two Orders. (*See* Doc. No. 113.)

27.     Later that day, Wells delivered the envelope containing the Judgment and other documents to the Defendant's sister, Novotny.

28.   Novotny looked at the documents and determined that they reflected a judgment adverse to the Defendant.  Novotny determined that she would not inform the Defendant of the adverse decision because the Defendant was either out of town or was attempting to meet a deadline in another lawsuit in which she is attorney of record.

29.   Since the trial in this Court, the Defendant had personally checked with the Clerk three or four times to determine whether the Court had issued its Judgment.  The Defendant had also asked Novotny to check with the Clerk, and Novotny had done so approximately a dozen times.

30.   The Defendant had not diligently checked with the Clerk since December of 2005, because, as she testified, she was involved in other trials during the first part of 2006.

31.   The Defendant's Motion does not mention that the Defendant's involvement in trials at the beginning of 2006 prevented her from checking with the Clerk on the status of the Court's Judgment.

32.   The Defendant has not taken the necessary steps to establish an account on PACER[12] or CM/ECF.

33.   Novotny, who has appeared on behalf of the Defendant at least once in this Adversary Proceeding (Doc. Entry Sept. 30, 2004), has had PACER and CM/ECF accounts since at least December of 2005.

34.   Novotny only used PACER/CM/ECF to check the status of the Judgment after she: (1) received the Judgment and accompanying documents on February 28, 2006; (2) investigated the matter and learned that the BNC had mailed the Judgment and accompanying documents

---

[12]"Public Access to Court Electronic Records (PACER) is an electronic public access service that allows users to obtain case and docket information from Federal Appellate, District and Bankruptcy courts. . . ." Admin. Office of the U.S. Cts. PACER Svc. Ctr., PACER Overview, http://pacer.psc.uscourts.gov/pacerdesc.html.

to the Defendant on February 9, 2006; and (3) determined that these two facts were "inconsistent."

35.     While she has not registered for PACER and CM/ECF accounts, the Defendant has had access to the internet and an e-mail account at all times relevant to the determination of the Defendant's Motion.

36.     Additionally, the Defendant elected not to access the CM/ECF records that may be accessed at the Clerk's office at no charge.[13]

37.     On March 2, 2006, Novotny gave the Judgment, Opinion, and two Orders to the Defendant.

38.     On March 3, 2006, at the Defendant's request, Novotny telephoned Essmyer to inquire about the Judgment, Opinion, and two Orders. After Novotny spoke with Essmyer, the Defendant came on the line and spoke with Essmyer.

39.     Essmyer indicated that he had received the Judgment, Opinion, and two Orders via e-mail through the CM/ECF on February 9, 2006.

40.     Essmyer further indicated that the Opinion had been divided into parts on the CM/ECF. (*See* Doc. No. 105.)

41.     Essmyer e-mailed the parts of the Opinion to the Defendant on March 3, 2006. (Pl. Ex. 4.)

42.     During their conversation, Essmyer referred either the Defendant or Novotny to Rule 8002, which provides that a notice of appeal shall be filed within 10 days of the entry of the judgment, order, or decree that the party appeals and that a party may seek an extension of time to file the notice of appeal. *See* FED. R. BANKR. P. 8002(a), (c)(2).

---

[13] *See* Administrative Procedures for the Filing, Signing, and Verifying of Documents by Electronic Means in Texas Bankruptcy Courts, V(B), http://www.txs.uscourts.gov/ecf/adminproc.pdf.

43.     Novotny filed the Defendant's Motion in the after-hours depository at the Clerk's office on the morning of March 10, 2006, before 8:30 a.m., which was 31 days after the entry of the Judgment, 21 days after the 10-day time period for filing of a notice of appeal, and one day after the 20-day time period for filing a motion to extend the time for filing an extension of time to file a notice of appeal. *See id.*

44.     The Defendant's Motion bears the Clerk's date stamp indicating that the Motion was filed on March 9, 2006, which was exactly 30 days after the entry of the Judgment and 20 days after the expiration of the10-day time period for filing of a notice of appeal. *Id.*; (*see* Doc. Nos. 106, 113.)

45.     In her certificate of service, the Defendant certified that a true and correct copy of the Defendant's Motion was forwarded to Essmyer on March 9, 2006.

46.     Essmyer never received a copy of the Defendant's Motion.

47.     The Defendant failed to submit any evidence that she served a copy on the Plaintiff. Novotny could only testify that she "believe[d]" that she served a copy on the Plaintiff via first class mail on March 10, 2006, but she could not testify that she knew for certain that she did so. Moreover, the Defendant did not admit any evidence besides her certificate of service (such as certified mail, return receipt "green card" or other proof of service) to show that she served the Plaintiff with her Motion. Accordingly, the Court finds that the Defendant never served her Motion on the Plaintiff.

# III. CONCLUSIONS OF LAW

## A.   Jurisdiction and Venue

1.   This Court has jurisdiction over this Adversary Proceeding, and motions related thereto, pursuant to 28 U.S.C. § 157(b)(2)(I) and § 1334(b).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

2.   As a preliminary matter, this Court addresses the Plaintiff's argument that this Court lacks jurisdiction to hear this matter under Rule 8002(c).  The Plaintiff cites Rule 8002(c)(1)(A), which states, "The bankruptcy judge may extend the time for filing the notice of appeal by any party, unless the judgment, order or decree appealed from: (A) grants relief from an automatic stay under § 362, § 922, § 1201, or § 1301[.]"  The Plaintiff argues that the Judgment in this Adversary Proceeding granted him relief from the automatic stay; and, as such, Rule 8002(c)(1)(A) prohibits any extension to file the notice of appeal.  The Plaintiff cites cases from the Sixth and Ninth Circuits that hold that once a bankruptcy court enters judgment holding a debt nondischargeable, the automatic stay does not preclude execution of the judgment against property of the debtor that is not property of the estate.  *See Boatmen's Bank of Tennessee v. Embry (In re Embry)*, 10 F.3d 401, 404 (6th Cir. 1993).[14]

3.   Notably, none of the cases the Plaintiff cites finds that a court lacks jurisdiction to grant an extension under Rule 8002(c)(2) because that court entered a judgment finding a debt

---

[14]For this proposition, the Plaintiff also cites *Palm v. Klapperman (In re Cady)*, 266 B.R. 172, 180 (B.A.P. 9th Cir. 2001); *California State Univ. v. Gustafson (In re Gustafson)*, 111 B.R. 282, 285 (9th Cir. 1990), *rev'd on other grounds*, 934 F.2d 216 (9th Cir. 1991); *Watson v. City Nat'l Bank (In re Watson)*, 78 B.R. 232, 234 (B.A.P. 9th Cir. 1987); *see also In re Arneson*, 282 B.R. 883, 893 (B.A.P. 9th Cir. 2002) (finding, "In the alternative, one could say that the adversary proceeding judgment functions as a de facto grant of stay relief for judgment enforcement purposes. We note that the 10-day automatic stay of judgment enforcement provided by Federal Rule of Civil Procedure 62(a) coincides with the 10-day bankruptcy appeal period prescribed by Federal Rule of Bankruptcy Procedure 8002(a). *Compare* Fed. R. Civ. P. 62(a) [which provides, in part ". . . no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry."], *incorporated by* Fed. R. Bankr. P. 7062, *with* Fed. R. Bankr. P. 8002(a)").

nondischargeable, as the Court does in this matter. (*See* Doc. No. 106.) Moreover, this Court disagrees with the Plaintiff's interpretation of the Judgment as granting relief from the automatic stay under §§ 362, 922, 1201, or 1301 so as to preclude the grant of an extension as provided by Rule 8002(c)(1)(A). In the Judgment, this Court found that the Plaintiff's claim against the Defendant was nondischargeable under 11 U.S.C. § 523(a)(4), and in the alternative, under § 523(a)(6). (Doc. No. 106.) Because the Judgment did not grant relief from the automatic stay under §§ 362, 922, 1201, 1301, this Court has jurisdiction to determine whether to grant the Defendant an extension of time to file her notice of appeal

**B.     The Defendant's Motion was not timely filed.**

4.      Rule 8002(a) provides that a "notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." In computing a period of time, the day of the event causing the period of time to begin to run shall not be included in the computation. FED. R. BANKR. P. 9006(a). As the Judgment was entered on February 7, 2006 (Doc. No. 106), the deadline to file a notice of appeal in this case was February 17, 2006.

5.      Additionally, Rule 8002(c)(2) provides that a bankruptcy judge may extend the time for filing a notice of appeal upon written motion filed before the expiration of the 10-day period for filing the notice of appeal, "except that such a motion filed not later than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect." As the deadline to file a notice of appeal was February 17, 2006, the deadline to file a motion for extension of the time to file a notice of appeal (based upon excusable neglect) was March 9, 2006.

6.      Novotny testified that she "late-filed" the Defendant's Motion in the after-hours depository

at the Clerk's office on the morning of March 10, 2006, before 8:30 a.m., which was 31 days

after the entry of the Judgment, 21 days after the 10-day time period for filing of a notice of

appeal, and one day after the 20-day time period for filing a motion to extend the time for

filing an extension of time to file a notice of appeal. *See* FED. R. BANKR. P. 8002(a), (c)(2).

7.      The Defendant's Motion bears the Clerk's date stamp indicating that the Motion was filed

on March 9, 2006, which was exactly 30 days after the entry of the Judgment and 20 days

after the expiration of the10-day time period for filing of a notice of appeal. *Id.*; (*see* Doc.

Nos. 106, 113.)

8.      In her testimony, Novotny explained that she "late-filed" the Defendant's Motion on the

morning of March 10, 2006, before 8:30 a.m. because the Clerk will accept filings from 7:00

a.m. through 8:30 a.m. as if filed on the preceding day.  The Court notes that there is not a

Local Rule or other written rule setting forth that by placing pleadings in the after-hours

depository from 7:00 a.m. to 8:30 a.m., the party is entitled to have those pleadings date

stamped as if they were filed the previous day.  Regarding after-hours filings, the website for

the Southern District of Texas provides only that:

> The after-hours filing depository at the U.S. Courthouse, 515 Rusk, Houston,
> Texas, is located inside the building on the first floor immediately past room
> 1217.  It is available for filings from 7:00 a.m. to 8:30 a.m. and then again
> from 4:30 p.m. to 6:00 p.m. on weekdays. Filing of emergency matters after
> 6:00 p.m. and on weekends may be arranged by calling the clerk's office
> emergency number: 832-215-8626.

Southern   District   of   Texas   After-hours   Filing   Depository   Information,

http://www.txs.uscourts.gov/news/filingdepoinfo.htm.

9.      Novotny apparently believes that the above language allowed her to file the Defendant's

Motion between 7:00 a.m. and 8:30 a.m. on March 10, 2006 and automatically receive a

17

date stamp of March 9, 2006. This Court believes that Novotny is in error. Pursuant to the increased security following September 11, 2001, the Clerk's after-hours depository was no longer accessible 24 hours a day. The Bob Casey United States Courthouse where the Clerk's office is located is open from 7:00 a.m. through 6:00 p.m., and the after-hours depository is accessible during those hours even though the Clerk's office is only open from 9:00 a.m. to 4:30 p.m. There is no longer a self-service file date and time stamp at the after-hours depository. Therefore, when the Clerk's staff members collect the documents from the after-hours depository each morning, they stamp the documents with the previous day's date because they have no way of knowing whether the contents of the after-hours depository were filed after 6:00 p.m. the previous evening. That is exactly what happened with respect to the Defendant's Motion. There is no question that the Clerk's office stamped March 9, 2006 on the Defendant's Motion, but that is only because the person or persons from the Clerk's office, when they retrieved the filings from the after-hours depository after 8:30 a.m. on March 10, 2006, had no knowledge that Novotny had filed the Defendant's Motion that morning. If Novotny had left a note attached to the Defendant's Motion that she made this filing at approximately 8:30 a.m., the Clerk's office would unquestionably have date stamped the Motion as being filed on March 10, 2006.

10.     This conclusion is consistent with the basic principle that a pleading should be date stamped on the very day that it is filed. This basic principle applies to filings via the CM/ECF, as the following language signifies: "A document is filed on a particular day if the transmission of the document is completed prior to midnight." *See* Administrative Procedures for the Filing, Signing, and Verifying of Documents by Electronic Means in Texas Bankruptcy Courts III(F), http://www.txs.uscourts.gov/ecf/ adminproc.pdf. There is no good or logical

reason why this principle should not apply to those pleadings that are still being filed in hard copy by hand delivery.   Indeed, in the computer age in which we live, when courts, including the Southern District of Texas, are increasingly using improved technology in the courtroom and in the Clerk's office, it seems incongruous to reward those attorneys who are still filing hard copy pleadings by hand delivery instead of keeping pace with the times by using computers and filing pleadings electronically.   That, however, is exactly what would happen if hard copy pleadings that the filing attorney admits are filed in the after-hours depository on the morning of March 10 are date stamped and became filed on March 9.   If the same pleading had been electronically filed on March 10, the filing would be docketed as a March 10, not a March 9, filing.

11.     In the case at bar, Novotny testified under oath that she filed the Defendant's Motion on the morning of March 10, 2006 before 8:30 a.m.   Because she testified that she filed the Defendant's Motion on the morning of March 10, 2006, this Court has information today that the Clerk's office did not have on March 10, when the Clerk's staff retrieved the documents from the after-hours depository.    Novotny's testimony unequivocally demonstrates that the Defendant's Motion was filed on March 10, 2006; and, therefore, the date stamp of March 9, 2006 is incorrect and should be March 10, 2006.[15]   Accordingly, the Court finds that the Defendant's Motion was filed on March 10, 2006.

12.     In sum, there are two avenues for obtaining an extension of time to file a notice of appeal: (1) file a motion within the initial 10-day period; or (2) file a motion between day 11 and day 30 and show that the motion was not filed within the initial 10-day period due to

---

[15]In denying the Defendant's Motion, the Court is also ordering that the date stamp on Defendant's Motion be deemed to be March 10, 2006.

excusable neglect. *See* FED. R. BANKR. P. 8002(a), (c)(2). Even the Defendant does not

contend that she sought to extend the time through any filing made within the initial 10-day

period (which ended on February 17, 2006). What the Defendant does contend is that she

filed her Motion on exactly the 30th day after the entry of the Judgment on the docket (i.e.,

on March 9, 2006) and that therefore she is entitled to an extension of time so long as she

can show excusable neglect. This Court disagrees. Because this Court finds that the

Defendant's Motion was filed on March 10, 2006 instead of March 9, 2006, it necessarily

follows that the Motion was filed on the 31st day following the entry of the Judgment.

Because March 10, 2006 is outside the 30-day time limit imposed by Rule 8002(c)(2), the

Defendant's Motion was untimely filed as a matter of law. The timeliness requirements of

Rule 8002(c)(2) are jurisdictional and strictly construed. *Rain Bird Corp. v. Salisbury* (*In

re Salisbury*), 337 B.R. 588, 591 (Bankr. N.D. Miss. 2006). Accordingly, this Court must

deny the Defendant's Motion. *In re Laxson*, 171 B.R. 34 (Bankr. N.D. Tex. 1994).

**C.**     **In the alternative, even if the Defendant's Motion was timely filed, the Defendant
failed to demonstrate excusable neglect as required under Rule 8002(c)(2) for an
extension of time to file her notice of appeal.**

13.    Rule 8002(a) provides that a notice of appeal shall be filed within 10 days of the date that

judgment is entered. Rule 8002(c)(2) further provides that the bankruptcy judge may extend

the time for filing the notice of appeal and specifies as follows:

> A request to extend the time for filing a notice of appeal must be made by
> written motion filed before the time for filing a notice of appeal has expired,
> *except that such a motion not filed later than 20 days after the expiration of
> the time for filing a notice of appeal may be granted upon a showing of
> excusable neglect.* An extension of time for filing a notice of appeal may not
> exceed 20 days from the expiration of the time for filing a notice of appeal
> otherwise prescribed by this rule or 10 days from the date of entry of the
> order granting the motion, whichever is later.

FED. R. BANKR. P. 8002(c)(2) (emphasis added). The highlighted language above reflects that the key issue regarding the Defendant's Motion is whether she has shown excusable neglect.

14.     The seminal case defining excusable neglect is *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). In *Pioneer*, the Supreme Court set forth certain factors for courts to consider in making determinations involving excusable neglect. *Pioneer*, 507 U.S. at 395, 113 S. Ct. at 1498. These factors are: (1) danger of prejudice to the non-movant; (2) length of delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395, 113 S. Ct. at 1498.

15.     While *Pioneer* dealt with excusable neglect within the context of Bankruptcy Rule 9006(b)(1) in a Chapter 11 case, the Fifth Circuit has found that the Supreme Court's application of excusable neglect in *Pioneer* applies to appeals from the bankruptcy court. *Christopher v. Diamond Benefits Life Ins. Co.* (*In re Christopher*), 35 F.3d 232, 236 (5th Cir. 1994) (applying *Pioneer* to Rule 8002 issue); *see also Xuchang Rihetai Human Hair Goods Co., Ltd. v. Hongjun Sun* (*In re Hongjun Sun*) 323 B.R. 561, 564 (Bankr. E.D.N.Y. 2005) (explaining, "the nature and extent of the Supreme Court's exposition of the term [in *Pioneer*] makes it clear that the meaning attributed to 'excusable neglect' has broad application to bankruptcy practice and procedure.") In *Christopher*, the Fifth Circuit noted that the Supreme Court in *Pioneer* stated that "excusable neglect at bottom is an equitable consideration 'taking into account all relevant circumstances surrounding the party's omission,'" including the factors set forth in *Pioneer*. *Christopher*, 35 F.3d at 236 (citing

21

*Pioneer*, 507 U.S. at 395, 113 S. Ct. at 1498); *Hongjun Sun*, 323 B.R. at 564 (citing same).

When applying the *Pioneer* factors, the *Hongjun Sun* court explained that the "reason for

delay" factor (i.e., the third factor) carries more weight than the other factors. *Id.* at 564-65.

1.   **The first two *Pioneer* factors:  (1) the danger of prejudice to the Plaintiff; and
     (2) the length of delay and the potential impact on the judicial proceedings**

16.   The *Hongjun Sun* court cautioned that "knee jerk consideration of the first two *Pioneer*

factors would improvidently skew the balance towards virtual unbridled allowance of out-

of-time appeals." *Id.* at 565.  The court noted that the first two factors—prejudice to the

non-movant and length of delay—will invariably favor the movant.  *Id.*  The court reasoned

that because of the strict time constraint governing appeals contained under Rule 8002,

"'delay always will be minimal in actual if not relative terms, and the prejudice to the non-

movant will often be negligible.'" *Id.*[16]  However, in the instant matter, the prejudice to the

Plaintiff would likely be significant because he has waited for nearly a decade to collect the

money that the Defendant owes him.

17.   As noted *supra* at footnote 11, Plaintiff's efforts to collect the money that the Defendant

owes him have led him to file two lawsuits in state court, in addition to this Adversary

Proceeding.  The obligation owed by the Defendant to the Plaintiff was reduced to writing

on November 26, 1996, when the Plaintiff and the Defendant entered into a written

agreement whereby the Defendant assigned to the Plaintiff a contingent interest in the

outcome of various lawsuits on which the Plaintiff worked while employed by the

Defendant's firm.  (*See* Doc. No. 82, Ex. 1).  When the Defendant did not pay the Plaintiff

pursuant to their agreement, the Plaintiff filed suit in state court in 1998.  (*Id.* at Ex. 16.)

---

[16](citing *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000), *cert. denied*, 531 U.S. 929,
121 S. Ct. 309, 148 L. Ed. 2d 248 (2000)).

The lawsuit was dismissed after November 20, 1999, when the Plaintiff and the Defendant entered into a mediated settlement agreement whereby the Defendant agreed to pay the Plaintiff the money she owed to him. (*Id.* at Ex. 22.) To effectuate the terms of the settlement agreement, the Defendant executed a promissory note in which she agreed to pay the Plaintiff in installments over 60 months. (*Id.* at Ex. 23.) After the Defendant defaulted on the note, the Plaintiff brought a second suit in state court and moved for summary judgment, which the state court granted on March 7, 2003. (*Id.* at 26, 28, 41).

18.    On June 2, 2003, the Defendant filed her Chapter 11 Voluntary Petition (Case No. 03-38089, Doc. No. 1), which was converted to a Chapter 7 case on April 30, 2004 because the Plaintiff was unable to obtain a confirmed plan (*Id.* at Doc. No. 104). On September 30, 2003, the Plaintiff filed a proof of claim in the Defendant's Chapter 7 case. (Doc. No. 83, Attach. 1/Ex. 60.)

19.    On August 9, 2004, the Plaintiff filed his Complaint in this Adversary Proceeding, for which trial occurred over six days in April of 2005. (Doc. Nos. 86, 87, 91, 92, 96.) In addition to failing to make payments according to the mediated settlement agreement, throughout the proceedings in the Plaintiff's second suit in state court and in this Court, the Defendant filed various motions for extension and continuance and repeatedly missed deadlines. (*See* Doc. Nos. 8, 28, 57, 62, 67, 76, 113; 82, Exs. 29, 30, 32, 36, 37, 40, 43, 45, 49.) Further delaying matters by granting the Defendant's Motion would only further unfairly prejudice the Plaintiff. The Plaintiff has waited long enough to be justly compensated. In sum, analysis of the first two factors provides no basis for this Court to find that there is excusable neglect.

## 2.    The third *Pioneer* factor: the reason for the delay

20.    After surveying how courts in different circuits applied the *Pioneer* factors, the court in

*Hongjun Sun* observed: "In a typical case involving a motion to file a late appeal on the

ground of excusable neglect, the four factors in *Pioneer* do not carry equal weight; the main

focus of an inquiry is the third factor, 'the reason for the delay, including whether it was

within the reasonable control of the movant.'" *Hongjun Sun*, 323 B.R. at 564-65.[17] Here,

Defendant's reasons for her delay are: (1) she did not receive the Opinion and Judgment

until February 28, 2006 (i.e., three weeks after the Clerk entered the Opinion and the

Judgment on the docket);  (2) she personally did not have the time to check on the status of

the whether the Judgment was docketed because she was involved in many trials in early

2006; and (3) she did not have the staff either to assist her with her workload or to check

on the status of whether the Judgment and the Opinion had been docketed.

21.    Bankruptcy Rule 9022(a) states that "[l]ack of notice of the entry does not affect the time

to appeal or relieve or authorize the court to relieve a party for failure to appeal within the

time allowed, except as permitted in Rule 8002." *See also United States v. Cont'l Airlines

Corp. (In re Cont'l Airlines Corp.)* 67 B.R. 5, 7 (Bankr. S.D. Tex. 1986) (discussing Rules

---

[17](citing as follows: "*Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2nd Cir. 2003) (citation and internal quotation marks omitted); *see Weinstock*, 16 F.3d [355,] 366 [(2nd Cir. 2003)] (affirming denial of motion to file late appeal for excusable neglect because of unacceptable reason for delay, even though *Pioneer* factors worked in favor of movant; *Belcher v. Columbia University (In re Belcher)*, 293 B.R. 265 (Bankr. N.D. Ga. 2001) (denial of request to file late appeal without discussion of *Pioneer* factors other than reason for delay); *Joslin v. Wechsler (In re Wechsler)*, 246 B.R. 490, 494 (S.D.N.Y. 2000) (denial of request to file late appeal because the reason for delay weighed against movant, even though the three other *Pioneer* factors tended to favor movant); *HML II, Inc. v. Ginley (In re HML II, Inc.)*, 234 B.R. 67, 72 (6th Cir. BAP 1999) (affirming denial of request to file late appeal, considering only the circumstances leading to the failure to file a notice of appeal in a timely manner); *Huennekens v. Marx (In re Springfield Contracting Corp.)*, 156 B.R. 761 (Bankr. E.D. Va. 1993) (denial of request to late file appeal based upon analysis limited to reason for delay factor.)").

8002 and 9022). The timeliness requirements of Rules 8002(a) and 8002(c)(2) are jurisdictional and strictly construed. *Salisbury*, 337 B.R. at 591-92.[18]

22. Therefore, under Bankruptcy Rule 9022(a), the Defendant's late notice of the entry of the Judgment does not affect the Defendant's time to appeal, nor does it authorize this Court to relieve the Defendant of her failure to appeal within the time allowed, except as permitted in Rule 8002(c)(2) (which the Court addresses below). The Defendant's assertion that she did not receive actual notice of the entry of the Judgment until after the appeal period is irrelevant. *See Arbuckle v. First Nat'l Bank of Oxford (In re Arbuckle)*, 988 F.2d 29, 31 (5th Cir. 1993). The period begins to run from the date of the Judgment's entry, not the date of service. *Id.*

23. It is "well settled that attorneys have a duty to monitor the dockets to keep themselves informed as to entry of orders they wish to appeal." *In re Futronics Corp.*, 53 B.R. 126, 127 (Bankr. S.D.N.Y. 1985) (citing, *inter alia, Enerco v. Neary (In re Enerco)*, 43 B.R. 412 (Bankr. N.D. Tex. 1984)). Further, "[i]t is well-settled that failure to receive notice of entry of judgment or order is not an excuse for an untimely appeal because it is the party's affirmative duty to monitor the dockets." *Warrick v. Birdsell (In re Warrick)*, 278 B.R. 182, 187 (B.A.P. 9th Cir. 2002); *accord In re Anderson*, 330 B.R. 180, 187-88 (S.D. Tex. 2005) (quoting *Warrick*, 278 B.R. at 187); *Shepherd's Hill Dev. Co., LLC v. RAD Invs., LLC (In re Shepherds Hill Dev. Co. LLC)*, 316 B.R. 406, 415 (B.A.P. 1st Cir. 2004); *United States ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2nd Cir. 2001); *see also Cont'l*

---

[18](citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61, 103 S. Ct. 400, 403, 74 L. Ed. 2d 225 (1992); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315, 108 S. Ct. 2405, 2408, 101 L. Ed. 2d 285 (1988); *Bad Bubba Racing Prods., Inc. v. Huenefeld (In re Bad Bubba Racing Prods., Inc.)*, 609 F.2d 815 (5th Cir. 1980); *Robinson v. Robinson (In re Robinson)*, 640 F.2d 737 (5th Cir. 1981); *Arbuckle v. First Nat'l Bank of Oxford (In re Arbuckle)*, 988 F.2d 29 (5th Cir. 1993)).

*Airlines Corp.*, 67 B.R. 5, 7 (stating, "The [movant] had an affirmative duty to monitor the docket, and by neglecting to fulfill its duty, it cannot be entitled to the extraordinary relief from the Order as provided in Rule 60(b), Fed. R. Civ. P.," which provides for relief from judgment or order due to excusable neglect). The Defendant was aware of her affirmative duty to monitor the docket for entry of the Court's Judgment. The Defendant testified that she, personally and through Novotny, made several inquiries with the Clerk up until the autumn and/or winter of 2005. The Defendant's failure to receive notice does not constitute excusable neglect because the Defendant failed to properly fulfill her duty to sufficiently monitor the docket.

24.     The Defendant's argument that she was in trial at the time that the Clerk entered the Judgment does not remove the Defendant's affirmative duty to monitor the docket. Moreover, the Defendant introduced no evidence regarding what specific trials were occupying her time at the beginning of the year. Her mere conclusory statement that she was in trial is woefully insufficient for persuading this Court of the merits of her position.

25.     The Defendant's arguments that she was understaffed and did not have PACER and CM/ECF accounts also do not establish excusable neglect. The fact that the Defendant was without staff to check on the status of the Judgment and did not have a PACER or CM/ECF account would seem to increase her duty to monitor the docket as, without staff to assist her or a CM/ECF account to notify her, she could only depend on herself to monitor the docket.[19]

---

[19] *Cf. Futronics*, 53 B.R. at 128 (finding, in a case where the creditor's counsel cited the departure of associate primarily responsible for matter as rationale for failure to file a timely appeal, that "the duty to monitor the dockets would seem to be increased when succeeding counsel is less familiar with the case than his predecessor, if only for the purpose of educating counsel as to the parameters of his fiduciary responsibility so he may act accordingly.")

26.    It also seems that the Defendant's duty to monitor the docket would have increased given her history of difficulty with service, filing, and notice.  For some reason, mail has proven to be a problematic means for the Defendant to receive notice.  Not that it relieves the Defendant of her affirmative duty to monitor the docket, but based on her past experience, the Defendant should have been aware that depending on mail as her sole means of notice would not be the fastest and most reliable way for her to receive notice.  First, the Defendant argued that she was not properly served with the Plaintiff's Complaint in this Adversary Proceeding.  (*See* Tr., Dec. 16, 2004 Hr'g Mot. Dismiss, Pl. Ex. 7B, 1:13-21.)  Second, the Defendant argued that the Court's Judgment on Liability, signed and entered on December 20, 2004 (Doc. No. 22)[20], was not forwarded to her.  (Doc. No. 31, p. 2 at ¶ 3.)  And third, the Defendant has argued that errors on the part of the Clerk prevented the proper filing of her Answer.  (*See* Tr., Jan. 6, 2005 Pretrial Conference, (Pl. Ex. 7C, 4:3-25).)  For various reasons, the Defendant has repeatedly encountered problems with service, filing, and notice.  Therefore, her duty to monitor the docket for the entry of the Judgment would have increased, especially because: (1) Rule 8002(a) required her to file her notice of appeal

---

[20]The undersigned judge's temporary predecessor, visiting Judge John C. Akard, signed the Judgment on Liability.  Judge Akard signed the Judgment on Liability only after the Defendant had failed to file her Answer long after the deadline had passed and months after Judge Akard had instructed her to do so.  (*See* Doc. No. 22); Tr. Sept. 30, 2004 Docket Call (Pl. Ex. 7A at 3:18).)  The Defendant responded that: (1) she did not know that she could not file her motion to dismiss in lieu of an answer; and (2) she was not at the September 30, 2004 Docket Call (at which Novotny appeared on the Defendant's behalf), so she was unaware that the Court instructed her to file her answer within 10 days of the Docket Call.  (*See id.*; Tr. Sept. 30, 2004 Docket Call (Pl. Ex. 7A); Tr. Dec. 16, 2004 Hr'g Mot. Dismiss (Pl. Ex. 7B at 4:1-12).)  Judge Akard mercifully allowed the Defendant until the end of the day on December 16, 2004 to file her Answer.  *Id.*  When Judge Akard observed that the Defendant's Answer had not been entered on the docket on December 16, 2004, he issued the Judgment on Liability.  (Doc. No. 22.)  Shortly thereafter, the Defendant filed Defendant's Motion for New Trial as to Judgment on Liability (Signed and entered on December 20, 2004).  (Doc. No. 31.)  Attached to her Motion for New Trial were her Answer and the corresponding cover letter, each bearing the Clerk's files stamp dated December 16, 2004.  *See id.*  Because it appeared that the Defendant had filed her Answer on December 16, 2004, which was the deadline imposed by Judge Akard, the undersigned judge, having just taken the bench on December 30, 2004, and out of an abundance of caution with respect to the Defendant's due process rights, signed the Order Granting Defendant's Motion for New Trial as to Judgment on Liability and granted the Defendant's Motion for Continuance of Trial Setting.  (Doc. Nos. 28, 29.)  On January 4, 2005, the Defendant's Answer was entered on the docket as if it had been filed on December 16, 2004.  (*See* Doc. No. 25.)  Thereafter, trial of this Adversary Proceeding took place.

within just 10 days of the entry of the Judgment; and (2) lack of notice does not affect the time to appeal under Bankruptcy Rule 9022.

27.     Notably, the CM/ECF has proven a reliable means of receiving notices of docket entries to other counsel in this Adversary Proceeding.   In her Motion and at the Hearing, the Defendant made much of the fact that she only received part of the Court's 90-page Opinion in the envelope that Novotny delivered to her on March 2, 2006.  Included in the envelope were a full copy of the Judgment, the first 37 pages of the Opinion, and the two Orders. (Pl. Ex. 1.)  These documents were more than sufficient to notify the Defendant of the adverse Judgment entered against her.  Essmyer indicated that he received all parts of the Opinion on February 9, 2006 via the CM/ECF.  Because the Defendant had an affirmative duty to monitor the docket, the Defendant's argument regarding the incompleteness of the Opinion is irrelevant to this Court's determination of the Defendant's Motion.  Moreover, even after experiencing all of her problems with service and other notifications, the Defendant has not taken the necessary steps to establish an account on PACER or the CM/ECF because, she argues, she does not have a credit card, and PACER requires a credit card.  Although she does not have a credit card, Defendant still could have accessed the CM/ECF records that may be accessed at the Clerk's office at no charge.[21]   This, she also chose not to do.

28.     Further, while she has not registered for PACER and CM/ECF accounts, the Defendant has had access to the internet and an e-mail account at all times relevant to the determination of the Defendant's Motion.  Her failure to take advantage of the technology provided through PACER and the CM/ECF—particularly in this day and age, when computers are

---

[21]*See* Administrative Procedures for the Filing, Signing, and Verifying of Documents by Electronic Means in Texas Bankruptcy Courts V(B), http://www.txs.uscourts.gov/ecf/adminproc.pdf.

essential to operating a law firm—does not provide a basis for excusable neglect. If anything, her failure to avail herself of this technology reflects grossly inexcusable neglect.

29.    Additionally, the Defendant could have received notice of entry of the Judgment through Novotny's PACER and CM/ECF accounts. Indeed, given the extent to which the Defendant has turned to Novotny for assistance throughout this Adversary Proceeding, it is surprising that the Defendant failed to take advantage of her sister's PACER and CM/ECF accounts. Novotny, who has appeared on behalf of the Defendant at least once in this Adversary Proceeding (Doc. Entry Sept. 30, 2006), testified that she has had PACER and CM/ECF accounts since at least December of 2005. Novotny could have set her CM/ECF account to receive notices of docket entries in this Adversary Proceeding, whether she was the attorney-of-record or not. The CM/ECF allows the user to receive notices of docket entries in cases in which the user is involved and in additional cases in which the user is not involved.[22] Novotny therefore could have set her CM/ECF account to receive notices of docket entries in this Adversary Proceeding whether she was the attorney of record or not. Instead of adding this Adversary Proceeding to her CM/ECF account, Novotny only used PACER/CM/ECF to check the status of the Judgment after she: (1) received the Judgment and accompanying documents on February 28, 2006; (2) investigated the matter and learned that the BNC had mailed the Judgment and accompanying documents to the Defendant on February 9, 2006; and (3) determined that these two facts were "inconsistent." Moreover, the Defendant knew that her sister had this capability and yet either deliberately chose not

---

[22]United States District Court for the Southern District of Texas, Electronic Case Filing System User's Manual at 10, 12, http://www.txs.uscourts.gov/deemecf/ECFUserManual.pdf; *see also* https://ecf.txsb.uscourts.gov/cgi-bin/login.pl (log-in to ECF/PACER, follow "Utilities" hyperlink, follow "Maintain Your ECF Account" hyperlink, follow "E-mail information..." hyperlink, select "Send notice in cases in which I am involved" and "Send notices in these additional cases").

to ask her to make use of it, or did not think to make such a request. Either way, the Defendant's conduct does not come within hailing distance of excusable neglect.

30.     The Defendant could have also asked Novotny to direct her CM/ECF account to send notice of docket entries to the Defendant's e-mail address at no charge. The user may direct the CM/ECF to send notices of docket entries to other e-mail addresses that the user indicates.[23] Additionally, "parties who are served with a document through the use of the 'Notice of Electronic Filing' generated by the Court's transmission facilities have one opportunity to view, save, or print that document without charge by utilizing the hyperlink which will appear in that Notice."[24] If, after appearing on behalf of the Defendant, Novotny had registered as an attorney for the Defendant in this case, then Novotny could have added the Defendant's e-mail address on her CM/ECF account. Both Novotny and the Defendant would have received notice of the docket entries, including the Judgment, and an opportunity to view, save, or print that document without charge.

31.     As she did not receive notice of the Court's entry of the Judgment by fax, the Defendant apparently also elected not to register for noticing by fax of the Court's orders and judgments.[25] She could have easily done so.

_____

[23]United States District Court for the Southern District of Texas, Electronic Case Filing System User's Manual at 12, http://www.txs.uscourts.gov/deemecf/ECFUserManual.pdf; *see also* https://ecf.txsb.uscourts.gov/cgi-bin/login.pl (log-in to ECF/PACER, follow "Utilities" hyperlink, follow "Maintain Your ECF Account" hyperlink, follow "E-mail information..." hyperlink, under "Send the notices specified below, select "to my primary e-mail address" and "to these additional addresses").

[24]Administrative Procedures for the Filing, Signing, and Verifying of Documents by Electronic Means in Texas Bankruptcy Courts V(A)(1), http://www.txs.uscourts.gov/ecf/adminproc.pdf; United States District Court for the Southern District of Texas, Electronic Case Filing System User's Manual at 12, http://www.txs.uscourts.gov/deemecf/ECFUserManual.pdf.

[25]Southern District of Texas Noticing by Fax, http://www.txs.uscourts.gov/atyadm/faxnotc.htm.

32. In sum, the Defendant chose not to avail herself of any of the aforementioned forms of communication, which have been in effect for years. No attorney who refuses to keep technologically current in his or her practice will have much success demonstrating excusable neglect on the notice issue present here.

33. For all of these reasons, the Defendant's failure to receive notice in a timely and reliable manner, her workload, and her lack of support staff do not demonstrate excusable neglect as required under Rule 8002(c)(2). Notably, all of these factors were within the Defendant's reasonable control. *See Pioneer*, 507 U.S. at 385, 113 S. Ct. 1493.

   **3.    The fourth Pioneer factor: whether the Defendant acted in good faith**

34. Finally, the fourth *Pioneer* factor, the good faith of the movant, is rarely at issue in motions to file late appeals. *Hongjun Sun*, 323 B.R. at 565.[26] However, through her conduct, the Defendant has made her good faith an issue throughout this Adversary Proceeding. In addition to the Defendant's various excuses for missing deadlines and requesting various continuances and extensions[27], in its Opinion, the Court found that the Defendant embezzled the funds belonging to the Plaintiff. (Doc. No. 105 at 3.) Alternatively, and in addition to this holding, the Court found that the Defendant's spending of the funds belonging to the Plaintiff constituted willful and malicious injury by the Defendant to the Plaintiff. *Id.*

35. Moreover, with respect to the Defendant's Motion, and as noted *supra* at Findings of Fact 45-47, the Court finds that the Defendant falsely certified that she served a copy of her Motion on the Plaintiff. The Defendant testified that her finances have become such that she cannot afford to serve her filings on opposing counsel via certified mail, return receipt

---

[26](citing *Silivanch*, 333 F.3d at 366).

[27]*See supra* at Conclusions of Law 8-10.

requested "green cards." The Defendant testified that she uses "proof[s] of mailing" instead. Besides the false Certificate of Service accompanying the Motion, the Defendant produced no "proof of mailing" or other evidence demonstrating service of her Motion on the Plaintiff. Novotny could only testify that she "believe[d]," but was not certain, that she served the Plaintiff through his counsel via first class mail on March 10, 2006, the day after the Defendant certified that she mailed her Motion to the Plaintiff's counsel.

## IV. CONCLUSION

The Defendant's Motion asks this Court to grant her an extension of time to file her notice of appeal to the Court's Judgment, not on any legal basis, but on an emotional plea that this Court grant her an extension "[b]ecause of the delay in receipt of this Opinion and Judgment, the Defendant had no knowledge of the same and was not able to comply with the timely filing of her Notice of Appeal in this matter" and because "[t]he delay in this matter was through absolutely no fault of Defendant."

The Court denies the Defendant's Motion because the Court finds that the Motion was not timely filed as required by Rule 8002(a) and (c)(2). In the alternative, even if the Defendant's Motion was timely filed, the Court denies the Defendant's Motion because she has failed to demonstrate excusable neglect under Rule 8002(c)(2) to warrant an extension of time. The Defendant's late notice of the Judgment, her alleged involvement in other cases, and her lack of staff do not establish excusable neglect because, contrary to her statement, they were all ultimately under her reasonable control. Additionally, granting the Defendant's Motion when she has failed to establish excusable neglect would unfairly prejudice the Plaintiff and adversely affect the judicial proceedings.

Rather than constituting excusable neglect as required under Rule 8002(c)(2), Defendant's excuses constitute a "version of the classic 'my dog ate my homework' line."[28]  Throughout this Adversary Proceeding, the Defendant has offered little, if anything, more than hollow excuses for why she should not be held accountable for her conduct; her Motion continues this pattern.  Because the Defendant has failed to demonstrate excusable neglect as required under Rule 8002(c)(2), this Court denies the Defendant's Motion for an extension to file her notice of appeal in addition and in the alternative to denying the Defendant's Motion as untimely filed.  A separate order denying the Defendant's Motion will be entered on the docket simultaneously with this Memorandum Opinion.


SIGNED on May 10, 2006.

_____
Jeff Bohm
United States Bankruptcy Judge

The Clerk shall send a copy to:

    (1)    Valorie Davenport
             Davenport Legal Group
             440 Louisiana, Suite 1210
             Houston, Texas  77002


    (2)    Michael M. Essmyer
             Essmyer & Tritico
             4300 Scotland
             Houston, Texas 77007

---

[28] *Fox v. Am. Airlines*, 389 F.3d 1291, 1294 (D.C. Cir. 2004).